IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SYLVER L. BROOKS,                          )
                                           )
                    Plaintiff,             )
                                           )
        v.                                 )    Civil Action No. 08-60-SLR/MPT
                                           )
QUINN & QUINN, ATTORNEYS AT                )
LAW, and                                   )
MICHAEL P. QUINN, ESQUIRE,                 )
                                           )
                    Defendants.            )

## REPORT AND RECOMMENDATION

This is a legal malpractice action. The matter arises out of a complaint filed by

Sylver L. Brooks ("plaintiff") against Quinn & Quinn, Attorneys at Law (the "firm") and

Michael P. Quinn, Esquire ("Quinn") (collectively "defendants"). Plaintiff seeks recovery

for emotional distress, fraud, breach of fiduciary duty and legal malpractice.

Defendants move for summary judgment.

### Procedural Posture

This action was initiated on January 28, 2008, via a *pro se* complaint against

defendants.[1] Plaintiff amended her complaint on February 11, 2008. On February 14,

2008, defendants moved to dismiss plaintiff's amended complaint pursuant to Fed. R.

Civ. P. 12(b)(2), (5) &(6); plaintiff moved to strike defendants' motion on February 19,

2008. Defendants' motion to dismiss was denied as premature and plaintiff's motion to

strike was denied as moot on April 17, 2008.

---

[1] Jurisdiction is proper on diversity grounds pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 and is between citizens of different states.

On May 28, 2008, defendants filed a proposed motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), (5) &(6). Plaintiff responded in opposition to defendants' motion on June 13, 2008. On October 17, 2008, plaintiff filed motions for default judgment against each defendant to which defendants responded on October 31, 2008. The court denied defendants' motion to dismiss and plaintiff's motions for default judgment on November 19, 2008.

On October 24, 2008, defendants filed an answer to the amended complaint. Defendants raised six affirmative defenses: (1) plaintiff failed to state a cause of action for which relief may be granted; (2) the court lacks personal jurisdiction over defendants; (3) the court lacks proper venue; (4) plaintiff's recovery is barred or reduced due to plaintiff's own negligence which was the cause of her alleged damages due to her personal injuries; (5) plaintiff's recovery is limited to the amount plaintiff would have collected from her landlord even if plaintiff obtained a judgment in her favor against her landlord; and (6) defendants' reservation of the right to assert affirmative defenses revealed by discovery and investigation. Plaintiff filed an answer to defendants' affirmative defenses on October 30, 2008.

On November 6, 2009, defendants filed their present motion for summary judgment pursuant to Fed. R. Civ. P. 56, accompanied by a brief. Plaintiff filed an answer in opposition on December 7, 2009, to which defendants filed a reply brief on December 15, 2009. Defendants' motion for summary judgment is presently under consideration.

## Statement of Facts[2]

Plaintiff currently resides in Delaware. Quinn is a Pennsylvania resident and his firm operates in Pennsylvania. Quinn is not licensed to practice law in Delaware; however, Quinn allegedly informed plaintiff that he is barred in Delaware. The complaint asserts that plaintiff was injured in her apartment on October 11, 2004; she claims to have slipped on a fallen ceiling tile. Plaintiff avers that prior to being injured she sent her landlord, Vladimire Karpov ("Karpov"), three letters during September, 2004, complaining that her ceiling was cracked. Karpov never responded to those letters.

Plaintiff sought representation from the firm and met with Quinn on or around November 12, 2004, in furtherance of suing Karpov to compensate her for the slip-and-fall injuries. The firm, acting through Quinn, is alleged to have commenced representation of plaintiff via letter and contract. Plaintiff claims she attempted to contact Quinn every six months thereafter.

On or around October 8, 2006, Quinn allegedly called plaintiff and informed her that the statute of limitations for a claim against Karpov was about to expire. Plaintiff claims that Quinn admitted to making a mistake,[3] offered to pay her an unspecified amount of money and agreed to meet with her on December 9, 2006. At the meeting, Quinn allegedly "got angry and left". Since that day, no further meetings between plaintiff and defendants are claimed to have occurred. The final correspondence consists of a letter dated June 12, 2007, from plaintiff to Quinn requesting access to her

[2] All facts referenced herein are found in the complaint and the parties' motions and briefs.

[3] Plaintiff gives no specifics pertaining to the nature of the mistake Quinn allegedly made.

3

files: plaintiff maintains she has not received her files.

Plaintiff seeks $150,000 in statutory, punitive and compensatory damages for legal malpractice.

## Standard of Care

### Summary Judgment

Summary Judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law."[4]  Once there has been adequate time for discovery, Rule 56(c) mandates judgment against the party who "fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[5]  When a party fails to make such a showing, "there can be no 'genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[6]  The moving party is therefore entitled to judgment as a matter of law because "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."[7]  A dispute of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[8]

The moving party bears the initial burden of identifying portions of the record

---

[4] Fed. R. Civ. P. 56(c)(2).

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[6] *Id.* at 323.

[7] *Id.*

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

4

which demonstrate the absence of a genuine issue of material fact.[9]  However, a party

may move for summary judgment with or without supporting affidavits.[10]  Therefore, "the

burden on the moving party may be discharged by 'showing' – that is, pointing out to

the district court – that there is an absence of evidence supporting the nonmoving

party's case."[11]

If the moving party has demonstrated an absence of material fact, the

nonmoving party must then "come forward with specific facts showing that there is a

genuine issue for trial."[12]  If the nonmoving party bears the burden of proof at trial, he

"must go beyond the pleadings in order to survive a motion for summary judgment."[13]

That party "may not rest upon the mere allegations or denials of his pleadings, but must

set forth specific facts showing that there is a genuine issue for trial."[14]  At the summary

judgment stage, the court is not to "weigh the evidence and determine the truth of the

matter, but to determine whether there is a genuine issue for trial."[15]  Further, "there is

no issue for trial unless there is sufficient evidence favoring the nonmoving party for a

jury to return a verdict for that party."[16]  The threshold inquiry therefore is "determining

whether there is a need for trial – whether, in other words, there are any genuine factual

issues that properly can be resolved only by a finder of fact because they may

reasonably be resolved in favor of either party."[17]

---

[9] *Celotex*, 477 U.S. at 323.
[10] *Id.*
[11] *Id.* at 325.
[12] Fed. R. Civ. P. 56(c).
[13] *Yeager's Fuel v. Pennsylvania Power & Light Co.*, 22 F.3d 1260, 1273 (3d Cir. 1994).
[14] *Anderson*, 477 U.S. at 248.
[15] *Id.* at 249.
[16] *Id.*
[17] *Id.* at 250.

5

### Pro Se Litigant

Because plaintiff proceeds *pro se*, her pleading is liberally construed and her complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."[18]

### Discussion

Defendants make three assertion in their motion for summary judgment: (1) plaintiff failed to identify an expert or an expert's report indicating that defendants deviated from the standard of care as plaintiff's attorneys; (2) plaintiff failed to produce an expert or an expert's report indicating that Karpov deviated from the standard of care as plaintiff's landlord; and (3) plaintiff failed to produce an expert or an expert's report indicating that plaintiff is injured or was injured during the alleged slip-and-fall incident.[19]

#### Legal Malpractice

A legal malpractice claim requires proof of "the employment of the attorney and the attorney's neglect of a reasonable duty, as well as the fact that such negligence resulted in and was the proximate cause of loss to the client."[20] To establish damages, a plaintiff must prove that "but for the negligence complained of, the [plaintiff] would have been successful in the prosecution or defense of the [underlying] action."[21] Generally, "the standard of care applicable to a professional can only be established by

---

[18] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

[19] Plaintiff has not attached expert reports to any of her pleadings nor provided this court with the identities of any experts she plans to call as witnesses at trial. Additionally, the time allotted to identify experts and produce their reports has passed. *See* Fed. R. Civ. P. 26(a)(2) (requiring disclosure of identity of any expert witness who may be used at trial and production of that expert's written report).

[20] *Pusey v. Reed*, 258 A.2d 460, 461 (Del. 1969) *overruled on other grounds, Starun v. All Am. Eng'g Co.*, 350 A.2d 765, 768 (Del. 1975).

[21] *Id.* (citation omitted).

6

way of expert testimony."[22] An expert is not required, however, "when the professional's mistake is so apparent that a layman, exercising his common sense, is perfectly competent to determine whether there was negligence."[23]

Here, liberally construed, plaintiff's complaint asserts that defendants committed legal malpractice by allowing the statute of limitations to expire without filing suit; failing to inform plaintiff that Quinn was not licensed to practice law in Delaware, the state where the facts giving rise to the underlying suit occurred; and failing to provide plaintiff with her case file upon request. The necessity of an expert for each of plaintiff's assertions are addressed separately.

The Delaware Supreme Court established that "the failure to file a suit before the expiration of the statute of limitations can often fall under the common knowledge exception" to the expert requirement.[24] The Delaware Supreme Court only required an expert if the question of when the statute of limitations expires is not clear or obvious.[25] Here, defendants do not dispute the running of the statute of limitations, therefore, plaintiff is not required to produce an expert for that claim.

The Delaware legal ethics rules require that a lawyer "not admitted to practice in this jurisdiction shall not . . . hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction."[26] However, a lawyer not licensed in

---

[22] *Seiler v. Levitz Furniture Co. of the E. Region*, 367 A.2d 999, 1008 (Del. 1976); *see also Giordano v. Heiman*, C.A. No. 458-2000, 2001 WL 58952, at *1 (Del. Jan. 18, 2001) ("It is well settled under Delaware law that claims of legal malpractice must be supported by expert testimony.").

[23] *Weaver v. Lukoff*, C.A. No. 15-1986, 1986 WL 17121, at *1 (Del. July 1, 1986), citing *Larrimore v. Homeopathic Hosp. Ass'n*, 181 A.2d 573, 577 (Del. 1962).

[24] *Brooke v. Elihu-Evans*, C.A. No. 95C-07-005-NMT, 1996 WL 659491, at *1 (Del. Aug. 23, 1996).

[25] *Id.*

[26] DEL. LAWYERS' RULES OF PROF'L CONDUCT R. 5.5(b)(2) (2003).

7

Delaware may practice here on a temporary basis if the lawyer is licensed in another United States jurisdiction, is "not disbarred or suspended from practice in any jurisdiction" and only provides legal services that "arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice."[27] Legal services "arise out of" or are "reasonably related to" the lawyer's practice if "the services may draw on the lawyer's recognized expertise developed through the regular practice of law on behalf of clients in matters involving a particular body of . . . nationally-uniform . . . law."[28] Regardless of whether an ethics violation occurs, the rules' preamble provides that a violation "should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached."[29] Instantly, a liberal reading of plaintiff's complaint signals a violation of Rule 5.5. However, such a violation, in and of itself, provides insufficient grounds for a suit and the necessity of an expert's opinion to establish such a claim need not be considered.

Delaware's professional conduct rules also require that when representation is terminated, "a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . surrendering papers and property to which the client is entitled . . . ."[30] In the current matter, plaintiff's complaint appears to aver a violation of Rule 1.18, however, as above, such a violation is an insufficient basis for a claim.

---

[27] *Id.* at R. 5.5(c)(4).

[28] *Id.* at R. 5.5 cmt. [14].

[29] *Id.* at Scope [20]; *see also Flaig v. Ferrara,* C.A. No. 90C-11-095-WTQ, 1996 WL 944860, at *2 (Del Super. April 15, 1996) (holding that Delaware's professional conduct rules "were not intended to support independent claims of legal malpractice nor establish legal duties on the part of attorneys."), citing *Appeal of Infotech., Inc.,* 582 A.2d 215, 220 (Del. 1990).

[30] DEL. LAWYERS' RULES OF PROF'L CONDUCT R. 1.16(d) (2003).

Accordingly, this court will not determine whether an expert is required.

Therefore, the only duty of care plaintiff sufficiently asserted – failure to file a timely claim – need not be accompanied by an expert or an expert's report.[31] However, to avoid summary judgment, plaintiff must give adequate support showing a likelihood that her underlying claim against her landlord would have been successful.[32]

### Plaintiff's Underlying Claim

A negligence suit requires proof that "1)  the defendant owed the plaintiff a duty of care; 2) the defendant breached that duty; 3) the plaintiff was injured; and 4) the defendants' breach was the proximate cause of the plaintiff's injury."[33]

### Landlord's Duty of Care

In Delaware, the Residential Landlord-Tenant Code establishes that a landlord must provide "a rental unit which shall not endanger the health, welfare or safety of the tenants or occupants . . . ."[34]  Additionally, a landlord is responsible for "all repairs and arrangements necessary to put and keep the rental unit and the appurtenances thereto in as good a condition as they were, or ought by law or agreement to have been, at the

---

[31]  Although Delaware law is considered here and exclusively cited in defendants' opening brief, Pennsylvania's legal malpractice standard is substantially similar and leads to the same conclusions.  *See, e.g., Kituskie v. Corbman*, 714 A.2d 1027, 1029 (Pa. 1998) ("In order to establish a claim of legal malpractice, a plaintiff/aggrieved client must demonstrate three basic elements: 1) employment of the attorney or other basis for a duty; 2) the failure of the attorney to exercise ordinary skill and knowledge; and 3) that such negligence was the proximate cause of damage to the plaintiff."); *Storm v. Golden*, 538 A.2d 61, 65 (Pa. Super. 1988) ("allowing the statute of limitations to run against the former client's cause of action" is a "clear cut" breach of an attorney's duty of care).  Additionally, Pennsylvania's professional code mirrors that of Delaware in pertinent part.  *See* Pa. Disciplinary Rules of Prof'l Conduct Scope [19], R. 1.16 & R. 5.5 (2002).

[32]  *See Pusey*, 258 A.2d at 461.

[33]  *Campbell v. DiSabatino*, 947 A.2d 1116, 1117 (Del. 2008).

[34]  25 Del. C. § 5305(a)(2).

9

commencement of the tenancy."[35]  The Code's provisions are applicable as the

common law duty of care landlords owe to their tenants.[36]  Accordingly, Landlord-

Tenant Code violations provide justiciable grounds for negligence actions.[37]

If it is stipulated or proven that the duty imposed by the Landlord-Tenant Code is

not beached, an expert's opinion is required to establish a higher duty of care required

of landlords in the local community.[38]  However, an expert is not required if the

Landlord-Tenant Code does not "permit the alleged negligent conduct . . . because it is

unnecessary for the plaintiff to prove that the local standard of care is greater than the

base-line minimal standard created by the codes."[39]  Additionally, landlords are not

considered professionals under Delaware common law and, thus, an expert's opinion is

not required on such grounds.[40]  Finally, an expert's opinion would be necessary if the

issues are beyond the understanding of the typical jury.[41]  In *Vandiest v. Santiago*, the

Delaware Superior Court did not require an expert's opinion to establish a landlord's

duty of care when the negligent acts "concern[ed] a loose handrail and a faulty

doorframe," since such acts were not beyond a typical jury's understanding.[42]

---

[35] *Id.* at § 5305(a)(4).  Defendants, citing *Grochowski v. Stewart*, 169 A.2d 14 (Del. Super. 1961), assert that there is no common law duty on the part of the landlord to maintain a leasehold, and the tenant took the property in its condition and was responsible for its maintenance.  However, the common law relied upon in *Grochowski* was superceded by the Delaware Residential Landlord-Tenant Code, which specifies that "landlords are required to provide a safe unit fit for renting 'at all times during the tenancy.'" *Powell v. Megee*, C.A. No. 02C-05-031-RFS, 2004 WL 249589, at *2 (Del. Super. Jan. 23, 2004).

[36] *New Haverford P'ship v. Stroot*, 772 A.2d 792, 798 (Del. 2001).

[37] *Id.*

[38] *Norfleet v. Mid-Atlantic Realty Co.*, C.A. No. 95C-11-008-WLW, 2001 WL 695547, at *6 (Del. Super. April 20, 2001); *see also Miley v. Harmony Mill Ltd. P'ship*, 803 F. Supp. 965, 970-71 (D. Del. 1992) (requiring plaintiff to provide proof of higher standard of care in local leasing community than mandated by housing code with which defendant was already found in compliance).

[39] *Vandiest v. Santiago*, C.A. No. 02-C-06-003-WLW, 2004 WL 3030014, at *6 (Del. Super. Dec. 9, 2004).

[40] *Id.* at *7.

[41] *Mazda Motor Corp. v. Lindahl*, 706 A.2d 526, 533 (Del. 1998).

[42] *Vandiest*, C.A. No. 02-C-06-003-WLW, 2004 WL 3030014, at *7.

10

In the case at bar, plaintiff has not asserted that Karpov breached a duty of care beyond that required under the Residential Landlord-Tenant Code. Additionally, plaintiff has not conceded, nor have defendants proven, that Karpov did not violate the Code's duty of care.[43] This court is unaware of the terms of the lease and whether the lease contractually imposes the duty to repair on plaintiff.[44] Therefore, viewing the facts in a light most favorable to plaintiff, this court finds that Karpov was bound by the statutory duty of care, which required the inspection for and repair of defects in plaintiff's apartment. Finally, the asserted defect – a cracked, faulty ceiling – and Karpov's failure to repair, much like the situation in *Vandiest*, are within the purview of a typical jury and no expert testimony is required. Accordingly, plaintiff's suit should not be barred for failing to provide an expert or an expert's report pertaining to a landlord's duty of care. However, to continue with her claim of negligence, plaintiff must provide sufficient support that she suffered injuries as a proximate cause of Karpov's breach of his duty of care.[45]

### Injury to Plaintiff

To prove negligence, plaintiff must establish that she suffered an injury-in-fact

---

[43] Defendants, citing *Norfleet*, C.A. No. 95C-11-008-WLW, 2001 WL 695547, assert that plaintiff's failure to allege any code violation bars a case of negligence *per se* and requires expert testimony as to the local standard of care. However, Defendants' reliance on *Norfleet* and its ultimate conclusion is misplaced. In *Norfleet*, expert testimony was required for a common law negligence claim because the defendant was already found to have complied with the applicable code requirements. Conversely, here, Karpov has not been found in compliance with the Delaware Residential Landlord-Tenant Code and a common law negligence claim may be based solely on the duty of care imposed by the Code. *See Stroot*, 772 A.2d at 798 (explaining that plaintiff is "not prevent[ed] from relying on a statute as the source of defendant's duty" in common law negligence action regardless of any negligence *per se* claim).

[44] Plaintiff has not provided a copy of the lease and defendants have not asserted that the lease alters Karpov's statutorily imposed duty of care.

[45] *See Campbell*, 947 A.2d at 1117.

11

and that the injury was proximately caused by Karpov's breach of his duty of care.[46]

The necessity of expert testimony to establish the existence of an injury depends on the

nature of the alleged injury.[47]  Where the nature and extent of the injury is "open to

view", medical testimony is not required.[48]  However, if "the injury is internal, medical

testimony is necessary to establish the existence of the injury."[49]  When establishing

proximate causation of an alleged injury, if it "is not a matter of common knowledge,

expert testimony may provide a sufficient basis for a finding of causation, but in the

absence of such expert testimony it may not be made."[50]  In cases involving soft tissue

injuries, such "injuries may be caused by a number of activities or prior occurrences."[51]

Accordingly, expert testimony is required to establish that an alleged soft tissue injury

resulted from the alleged negligence of the party in question.[52]

In the case *sub judice*, plaintiff claims she suffered injuries to her back, most

specifically, spinal disc herniation.  In support thereof, plaintiff attached a report by Ka-

Khy Tze, M.D., analyzing a MRI of plaintiff's cervical spine.  The report notes a "Multi

level disc and osteophyte . . . indenting on the [spinal] cord" with "no spinal stenosis

---

[46] *See Id.*

[47] *McCormick Transp. Co. v. Barone*, 89 A.2d 160, 163 (Del. Super. 1952), *aff'd*, 135 A.2d 140 (Del. 1957).

[48] *Id.*

[49] *Briones v. Conagra/Perdue Farms*, C.A. No. 97A-07-003, 1998 WL 110094, at *2 (Del. Super. Jan. 7, 1998).

[50] *Money v. Manville Corp. Asbestos Disease Comp. Trust Fund*, 596 A.2d 1372, 1376 (Del. 1991) (requiring expert testimony to prove proximate cause of plaintiff's injuries from exposure to defendants' asbestos containing products); *see also Rayfield v. Power*, C.A. No. 434-2003, 2003 WL 22873037, at *1 (Del. Dec. 2, 2003) ("With a claim for bodily injuries, the causal connection between the defendant's alleged negligent conduct and the plaintiff's alleged injury must be proven by the direct testimony of a competent medical expert.").

[51] *Cann v. Dunner*, C.A. No. 07C-02-15-RRC, 2008 WL 5048425, at *3 (Del. Super. Nov. 13, 2008).

[52] *Id.*

. . . ."  Plaintiff has not asserted that Dr. Tze, or another medical expert, will be called to establish whether plaintiff was or is injured in fact and whether any injury to plaintiff resulted from Karpov's alleged negligence.  Therefore, plaintiff's suit is insufficient on two grounds.  First, regardless of the accuracy of Dr. Tze's report and any injuries noted therein, a medical expert is required to explain the nature of such injuries; plaintiff has failed to provide such an expert or the required expert information.  Second, even if plaintiff could prove that she suffered or is suffering from an injury in fact, she failed to provide an expert to opine on whether Karpov's alleged negligence was the proximate cause of her injuries.

### ORDER AND RECOMMENDED DISPOSITION

For the reasons contained herein, I recommend that:

(1) Defendants' motion for summary judgment (D.I. 53) be GRANTED, in part, and DENIED, in part.  As a result, plaintiff's action should be dismissed.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.Del.LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  Fed. R. Civ. P. 72(b).  The objections and response to the objections are limited to ten (10) pages each.

The parties are directed to the Court's standing Order in *Pro Se* matters for Objections Filed under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the Court's website, www.ded.uscourts.gov.

Dated: February 19, 2010          /s/ Mary Pat Thynge
                                  UNITED STATES MAGISTRATE JUDGE

13